IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**BENJAMIN FOLTA**                                                                                                                         **PLAINTIFF**

V.                                          **CASE NO. 3:21-CV-3038**

**NORFORK BREWING COMPANY**
**and JASON AAMODT**                                                                                                            **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Now before the Court are a Motion for Summary Judgment (Doc. 40) filed by Defendants Norfork Brewing Company ("NBC") and Jason Aamodt and a Motion for Partial Summary Judgment (Doc. 38) filed by Plaintiff Benjamin Folta. Both Motions are fully briefed and ready for decision.[1]

Defendants' Motion for Summary Judgment argues the Court should find as a matter of law that Mr. Folta did not regularly engage in interstate commerce while working for NBC, so he is not entitled to individual coverage under the Fair Labor Standards Act ("FLSA").[2] Defendants contend that although Mr. Folta, in his capacity as Brewer for NBC, engaged in interstate commerce to some limited degree—by placing a few online

---

[1] In considering Defendants' Motion (Doc. 40), the Court also reviewed Defendants' Brief in Support (Doc. 42) and Statement of Facts (Doc. 43); Mr. Folta's Response (Doc. 48) and Statement of Facts (Doc. 49); and Defendants' Reply (Doc. 51). In considering Mr. Folta's Motion (Doc. 38), the Court reviewed Mr. Folta's Brief in Support (Doc. 39) and Statement of Facts (Doc. 41); Defendants' Response (Doc. 45), Brief (Doc. 46), and Statement of Facts (Doc. 47); and Mr. Folta's Reply (Doc. 50).

[2] An employee is covered under the FLSA if he works for a business engaged in interstate commerce with an annual gross volume of sales of at least $500,000.00 ("enterprise coverage"), 29 U.S.C. §§ 207(a), 203(s)(1), *or* if the employee's work—regardless of the size of his employer—requires him to regularly engage "in commerce or in the production of goods for commerce" ("individual coverage"), 29 U.S.C. § 206 (a). Here, Mr. Folta has conceded that NBC's annual gross volume of sales is insufficient to qualify him for enterprise coverage. He believes he is entitled to individual coverage.

1

orders, traveling out of state on occasion, and communicating with Mr. Aamodt about business matters via text message and telephone—these tasks are not enough to establish Mr. Folta's regular use of interstate commerce and make his employment subject to the requirements of the FLSA.

Mr. Folta's Motion for Partial Summary Judgment asks the Court to find that during his tenure as Brewer, he was not paid on a "salary basis" as that term is defined at 29 C.F.R. § 541.602(a) from at least December 2018 until June 2019. Mr. Folta argues that in order to claim an exemption from the FLSA's minimum wage and overtime requirements, Defendants bear the burden of proving that he qualified as an executive, administrative, or professional employee. Exempt employees are paid a salary and are not entitled to overtime compensation. 29 U.S.C. § 213(a). The regulations define "salary basis" as the payment of a regular, predetermined amount each pay period. *See* 29 C.F.R. § 541.602(a). Mr. Folta contends there is no genuine, material dispute that Defendants failed to pay him a regular, predetermined amount each pay period through June 2019, so his job could not qualify as exempt during that time.

As for the period from June 26, 2019, until the date of his last paycheck, February 25, 2021, Mr. Folta concedes it is arguable that he was paid on a consistent, salary basis of $1,300.00 biweekly, which equates to $650.00 per week. However, Mr. Folta points out that effective January 1, 2020, exempt employees performing executive, administrative, or professional work were required to be paid a minimum weekly salary of $684.00, and Defendants' salary payments fell short.[3] Mr. Folta asks the Court to find

---

[3] Defendants claim Mr. Folta's job qualified for an executive, administrative, or professional exemption. *See, e.g.*, Doc. 46, p. 6.

2

that even if Defendants paid him on a salary basis from January 2020 until February 2021, the amounts they paid him during that time were insufficient as a matter of law to qualify for the FLSA's executive, administrative, or professional exemptions.

Below, the Court will begin its analysis of the two Motions by setting forth the appropriate summary judgment standard. Next, the Court will turn to the merits of Defendants' Motion for Summary Judgment, followed by Mr. Folta's Motion for Partial Summary Judgment. For the reasons explained below, Defendants' Motion is **DENIED**, and Plaintiff's Motion is **GRANTED**.

## I.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). The moving party bears the burden of proving the absence of any material factual disputes and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.*, 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is

3

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.   DISCUSSION

### A. Defendants' Motion

Defendants' Motion for Summary Judgment argues the Court should find as a matter of law that Mr. Folta did not regularly engage in interstate commerce while working for NBC, so he is not entitled to individual coverage under the FLSA. Defendants agree that while working as Brewer, Mr. Folta did a few tasks that related to interstate commerce. They contend, however, that those tasks were not regular enough or substantial enough to cause Mr. Folta's job to fall within the ambit of the FLSA.

Whether an employee falls within the FLSA's protection is a question of law, but "the amount of time an employee works and the duties he or she performs present factual questions." *Reich v. Stewart*, 121 F.3d 400, 404 (8th Cir. 1997). Individual coverage under the FLSA exists for employees who "regularly use the instrumentalities of interstate commerce in [their] work." *Miller v. Centerfold Ent. Club, Inc.*, 2017 WL 3425887, at *9 (W.D. Ark. Aug. 9, 2017) (quoting *Thorne v. All Restoration Servs.*, 448 F.3d 1264–66 (11th Cir. 2006)). For an employee to be "engaged in commerce" under the FLSA, the employee must directly participate "in the actual movement of persons or things in interstate commerce" by "(i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne*, 448 F.3d at 1266 (citing 29

C.F.R. § 776.23(d)(2); 29 C.F.R. § 776.24); *see also* 29 C.F.R. § 776.10(b) ("[S]ince 'commerce' as used in the Act includes not only 'transmission' of communications but 'communication' itself, employees whose work involves the continued use of the interstate mails, telegraph, telephone or similar instrumentalities for communication across State lines are covered by the Act.").

Mr. Folta testified in his deposition that he would order hops for the brewery through three different websites. (Doc. 42-1, pp. 47, 52). He claims he paid for the supplies using "the brewery credit card that was on file on the computer." *Id.* at p. 47. Defendants dispute that Mr. Folta was ever authorized to use a brewery credit card or that he ever ordered hops. There appears to be a genuine, material dispute of fact as to whether Mr. Folta ordered beer ingredients and in doing so availed himself of the use of interstate commerce. Further, though it is undisputed that Mr. Folta's job was to make beer that would eventually be sold in interstate commerce, there is a dispute of fact as to when Defendants first sold beer across state lines.

Next, Mr. Folta produced 135 pages of email correspondence he believes relates to his employment with NBC. (Doc. 42-5). Defendants respond that "a review of the email files Folta produced in this case show that he never actually sent an email from a company email address," that "he used his personal email, and that from 2018–2021 he sent a total of 6 emails that were work related." (Doc. 43, ¶ 13). Mr. Folta testified that he was, in fact, issued a work email account and sent work-related emails from that account. However, Mr. Folta believes Defendants deleted the work email account once Mr. Folta quit, and he can no longer access it. (Doc. 42-1, p. 39). In any event, the parties agree

5

that Mr. Folta sent some work-related emails while he was employed at NBC. They disagree as to how many work-related emails were sent.

Mr. Folta also produced 187 pages of text messages he contends relate in some way to his work for NBC. (Doc. 42-6). Defendants respond that "the text messages reveal they are mundane communications that were not even sent regularly, nor were they a part of Plaintiff's regular job duties." (Doc. 43, ¶ 14). Mr. Folta disagrees and believes that a "review of the text messages cited reveals they largely concern the day-to-day operations of the brewery and were often sent on a weekly or even daily basis." (Doc. 49, p. 2). Clearly, the parties agree that Mr. Folta sent and received at least some work-related text messages. They disagree about whether Mr. Folta sent enough text messages to constitute regular engagement in interstate commerce.

Finally, Mr. Folta testified in his deposition that he traveled outside Arkansas for work multiple times. (Doc. 42-1, p. 37). Defendants agree that Mr. Folta made at least three trips out of state on brewery business—to Kansas, Michigan, and Minnesota. (Doc. 42-3, pp. 2–3). They disagree that his out-of-state trips were numerous enough to qualify as regular engagement in interstate commerce.

For the reasons explained, the Court finds that genuine, material disputes of fact exist as to the quantity, quality, and nature of Mr. Folta's interstate contacts during his employment at NBC. These are fact questions reserved for the jury. As a result, Defendants' Motion for Summary Judgment (Doc. 40) on the issue of individual coverage under the FLSA is **DENIED**.

### B. Mr. Folta's Motion

Assuming Mr. Folta proves at trial that he qualifies for individual FLSA coverage, his Motion for Partial Summary Judgment asks the Court to find that Defendants wrongly categorized him as exempt from the FLSA's minimum wage and overtime requirements—based solely on the manner and amounts that he was paid—from at least December 2018[4] through June 22, 2019, and from January 1, 2020, through February 25, 2021. According to Defendants, Mr. Folta was always paid an agreed-upon salary and qualified as an exempt executive, administrative, or professional worker.

The Court has reviewed Mr. Folta's paystubs from NBC, which Defendants agree are authentic. Defendants also agree that Mr. Folta was paid the amounts reflected in the paystubs.[5]

Challenges to an employee's classification status ordinarily center around the nature of the employee's job duties. Workers who are "employed in a bona fide executive, administrative, or professional capacity" are exempt from the FLSA's minimum wage and overtime compensation requirements. 29 U.S.C. § 213(a)(1). The employer bears the burden of proof to establish "that the employee's 'primary duty' is the performance of exempt work, 29 C.F.R. § 541.700; that he is paid not less than the minimum salary level, § 541.600; and that he is paid on a 'salary basis,' § 541.602." *Coates v. Dassault Falcon*

---

[4] Even though Mr. Folta has provided paystubs for work beginning in November 2018, his Motion for Partial Summary Judgment asks the Court to make findings as to payments "beginning . . . December of 2018." (Doc. 39, p. 6).

[5] Defendants contend they made additional "salary" payments to Mr. Folta from October 2019 to May 2020 in the form of health insurance benefits, which are not included in the paystubs. However, Defendants provide no proof to substantiate: (1) the amount of each benefit payment and (2) whether the payments were directed to Mr. Folta or to a third party, such as an insurance company.

*Jet Corp.*, 961 F.3d 1039, 1042 (8th Cir. 2020) (citing *Grage v. N. States Power Co.-- Minn.*, 813 F.3d 1051, 1054 (8th Cir. 2015)).

Mr. Folta's Motion for Partial Summary Judgment focuses primarily on the last prong of the test for exempt work: whether he was paid on a "salary basis." To be clear, Mr. Folta does not ask the Court to delve into the question of whether his job duties at NBC were "executive, administrative, or professional," but instead to focus on the more basic question of how he was paid.  Being paid on a "salary basis" simply means that the worker:

> regularly receive[d] each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602.

From November 5, 2018, to February 24, 2019, Mr. Folta received **$960.00** in biweekly gross earnings.  For the pay period from February 25, 2019, to March 10, 2019, his biweekly pay dropped to **$880.00**. The next pay period, March 11, 2019, to March 24, 2019, his pay rose to **$1,320.00**.  Defendants explain Mr. Folta got a "raise" in March 2019, but his biweekly pay *dropped* to **$1,100.00** in April.  It remained at that rate until May 19, 2019.  Then, Mr. Folta's pay changed again.  His next three paystubs from May 20 to June 1, June 2 to June 15, and June 16 to June 22, show gross earnings of **$1,800**, **$1,191.67**, and **$596.00**, respectively.  Thereafter, from June 26, 2019, until the date of his last pay period, February 25, 2021, he received regular paychecks totaling **$1,300.00** every two weeks.  *See* Doc. 38-1.

Mr. Folta's earliest paystubs from November 5, 2018, to May 19, 2019, indicate the total number of hours he worked on a biweekly basis, multiplied by an hourly rate of

8

pay. Certain paystubs show a rate of pay of $11.00 per hour, *see id.* at pp. 19–24, while others show a rate of $12.00 per hour, *see id.* at pp. 1–3, 25–29. As a result, the gross hourly earnings on each paystub vary considerably. From May 20, 2019, to June 1, 2019, Mr. Folta's paystub reflects he worked a total of 50 hours over the course of two weeks at a rate of $12.00 per hour, for a total of $600.00. *See id.* at p. 18. The same paystub also reflects an additional $1,200.00 salary payment. *Id.* Defendants respond that despite the labels on the paystubs, Mr. Folta was never paid on an hourly basis, and these paystubs all reflect salary payments. For the pay period from June 2, 2019, to June 15, 2019, and the pay period from June 16, 2019, to June 22, 2019, Mr. Folta was paid lump-sum amounts labeled "salary"—one payment of $1,191.67, and the next $596.00. *Id.* at pp. 16–17. Defendants concede that Mr. Folta's pay in June 2019 was "irregular," but they explain that they docked his pay to discipline him for bringing a pistol into the brewery. *See* Doc. 46, p. 3.

As previously stated, it is Defendants' burden to prove they paid Mr. Folta on a salary basis. They have failed to meet this burden for the pay periods between at least December 2018 and June 22, 2019. His rate of pay during this time was not a regular, predetermined amount.

Mr. Folta's rate of pay does appear to become regular and predetermined after June 22, 2019. His paystub starting the week of June 26, 2019, reflects a biweekly payment of $1,300.00. That same amount was paid biweekly until Mr. Folta stopped working for NBC in February 2021. Mr. Folta notes, however, that as of January 1, 2020, workers who qualified as exempt due to the nature of their executive, administrative, or professional work were required to be compensated a minimum salary of $684.00 per

week.  *See* 29 C.F.R. §§ 541.100(a)(1) (executive); 541.200(a)(1) (administrative); 541.300(a) (professional).  As Defendants paid Mr. Folta a salary of only $650.00 per week (or $1,300.00 biweekly), this amount did not meet the minimum threshold. Defendants agree that if the jury finds Mr. Folta is entitled to individual coverage under the FLSA, they did not pay him enough per week after January 1, 2020, to qualify for an exemption.  *See* Doc. 46, p. 5 (admitting that "Plaintiff was, inadvertently, paid . . . less than the FLSA minimum for 30 weeks in 2020 and for 6 weeks in 2021").

For all these reasons, Mr. Folta's Motion for Partial Summary Judgment (Doc. 38) is **GRANTED**.  The Court finds that Mr. Folta was not paid on a salary basis from at least December 2018 until June 22, 2019, so his work was not exempt during those times.  It appears Mr. Folta was paid on a salary basis from June 26, 2019, until February 25, 2021; however, the salary payments made to him between January 1, 2020, and February 25, 2021, were insufficient as a matter of law to qualify for executive, administrative, or professional exemptions to the FLSA.

### C. Defendants' Damages Table and Offer of Settlement

Defendants created a table showing the damages they estimate they owe Mr. Folta for deficient salary payments, assuming, of course, that the jury finds he is entitled to individual coverage under the FLSA. *See* Doc. 46, pp. 2–3.  Because they concede Mr. Folta's salary payments were too low to qualify for executive, administrative, or professional exemptions for at least some period of time, they mailed Mr. Folta "a check for two times th[e] amount" they calculated they owe him.  *Id.* at p. 5.  As a result, Defendants now consider Mr. Folta's claims to be moot, since they believe any salary

10

deficiency "has now been rectified" through the payment of a settlement check. *Id.* at pp. 5–6.

The Court observes that Defendants' decision to mail Mr. Folta a settlement check does not "moot" his claims. Once litigation has commenced, employers may only settle FLSA cases "if the parties agree on a settlement amount and the district court enters a stipulated judgment." *Beauford v. ActionLink, LLC*, 781 F.3d 396, 405–06 (8th Cir. 2015). As far as the Court is aware, the parties have not agreed on a settlement amount.

### III.   CONCLUSION

For the reasons stated, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 40) is **DENIED**, and Plaintiff's Motion for Partial Summary Judgment (Doc. 38) is **GRANTED**.  This matter remains set for jury trial

**IT IS SO ORDERED** on this 1st day of September, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE